UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
NORTHERN DIVISION

| | |
|---|---|
| BRIAN BEAMER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 2:18-CV-00094 JAR |
| ) | |
| ANDREW SAUL, Commissioner, ) | |
| Social Security Administration,[1] ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM AND ORDER**

This is an action under 42 U.S.C. § 405(g) for judicial review of the Commissioner of Social Security's final decision denying Plaintiff Brian Beamer's application for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. § 401, *et seq.* and supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. § 1381, *et seq.*

**I.**     **Background**

Plaintiff applied for disability insurance benefits and supplemental security income benefits on February 24, 2016, alleging disability as of February 4, 2016 due to scoliosis, hypertension, cirrhosis, and mental impairments, variously diagnosed as depression and anxiety. After his application was denied at the initial administrative level, Plaintiff requested a hearing before an administrative law judge ("ALJ"). Following a hearing on February 15, 2018, the ALJ issued a written decision on May 14, 2018, denying Plaintiff's application. Plaintiff's request for

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), Andrew Saul is substituted for his predecessor, Acting Commissioner Nancy A. Berryhill. No further action needs to be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

1

review by the Appeals Council was denied on August 24, 2018. Thus, the decision of the ALJ stands as the final decision of the Commissioner. See Sims v. Apfel, 530 U.S. 103, 107 (2000).

## II. Facts

The Court adopts Plaintiff's Statement of Facts (Doc. No. 9-1) to the extent they are admitted by the Commissioner. (Doc. No. 14-1). The Court also adopts Defendant's Statement of Additional Facts. (Doc. No. 14-2). Together, these statements provide a fair and accurate description of the relevant record before the Court. Additional specific facts will be discussed as necessary to address the parties' arguments.

## III. Standards

The Court's role on judicial review is to determine whether the ALJ's findings are supported by substantial evidence in the record as a whole. Adkins v. Comm'r, Soc. Sec. Admin., 911 F.3d 547, 550 (8th Cir. 2018); see also Johnson v. Astrue, 628 F.3d 991, 992 (8th Cir. 2011). Substantial evidence is less than a preponderance, but enough that a reasonable mind would accept it as adequate to support the Commissioner's conclusion. Sloan v. Saul, 933 F.3d 946, 949 (8th Cir. 2019) (citing Chismarich v. Berryhill, 888 F.3d 978, 979 (8th Cir. 2018) (per curiam)). The Court may not reverse merely because substantial evidence exists in the record that would support a contrary outcome or because the court would have decided the case differently. Chaney v. Colvin, 812 F.3d 672, 676 (8th Cir. 2016). A reviewing court must consider evidence that both supports and detracts from the ALJ's decision. Id. If it is possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, the court must affirm the decision of the Commissioner. Id. In other words, a court should "disturb the ALJ's decision only if it falls outside the available zone of choice." Papesh v. Colvin, 786 F.3d 1126, 1131 (8th Cir. 2015). A decision does not fall outside that zone simply because the reviewing court

might have reached a different conclusion had it been the finder of fact in the first instance. Id. The Court defers heavily to the findings and conclusions of the Social Security Administration. Wright v. Colvin, 789 F.3d 847, 852 (8th Cir. 2015) (quoting Hurd v. Astrue, 621 F.3d 734, 738 (8th Cir. 2010)).

To determine whether the ALJ's final decision is supported by substantial evidence, the Court is required to review the administrative record as a whole and to consider:

(1) The findings of credibility made by the ALJ;
(2) The education, background, work history, and age of the claimant;
(3) The medical evidence given by the claimant's treating physicians;
(4) The subjective complaints of pain and description of the claimant's physical activity and impairment;
(5) The corroboration by third parties of the claimant's physical impairment;
(6) The testimony of vocational experts based upon prior hypothetical questions which fairly set forth the claimant's physical impairment; and
(7) The testimony of consulting physicians.

Brand v. Sec'y of Dept. of Health, Educ. & Welfare, 623 F.2d 523, 527 (8th Cir. 1980); see also Stamper v. Colvin, 174 F. Supp. 3d 1058, 1063 (E.D. Mo. 2016).

The Social Security Act defines as disabled a person who is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). The impairment must be "of such severity that [the claimant] is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." 42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has established a five-step process for determining whether a person is disabled. 20 C.F.R. §§ 416.920(a), 404.1520(a). "If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled." Goff v. Barnhart, 421 F.3d 785, 790 (8th Cir. 2005) (quoting Eichelberger v. Barnhart, 390 F.3d 584, 590-91 (8th Cir. 2004)).

First, the claimant must not be engaged in "substantial gainful activity" ("SGA"). 20 C.F.R. §§ 416.920(a), 404.1520(a). Second, the claimant must have a "severe impairment," defined as "any impairment or combination of impairments which significantly limits [claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 416.920(c), 404.1520(c). "The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on [his or] her ability to work." Page v. Astrue, 484 F.3d 1040, 1043 (8th Cir. 2007) (quoting Caviness v. Massanari, 250 F.3d 603, 605 (8th Cir. 2001)).

If the claimant has a severe impairment, the ALJ must determine at step three whether any of the claimant's impairments meets or equals an impairment listed in the Regulations. 20 C.F.R. §§ 416.920(d), 404.1520(d). If the claimant has one of, or the medical equivalent of, these impairments, then the claimant is per se disabled without consideration of the claimant's age, education, or work history. Id.

If the claimant's impairment does not meet or equal a Listing, the ALJ must determine the claimant's residual functional capacity ("RFC"). See 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00; 20 C.F.R. § 404.1520a(c)(3). RFC is an assessment of the claimant's ability to perform sustained work-related physical and mental activities in light of his impairments. SSR 96–8p. The relevant mental work activities include understanding, remembering, and carrying out instructions;

responding appropriately to supervision and co-workers; and handling work pressures in a work setting. 20 C.F.R. § 404.1545(c).

At step four, the ALJ must determine whether, given his RFC, the claimant can return to his past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(f), 416.920(a)(4)(iv), 416.920(f); Perks v. Astrue, 687 F.3d 1086, 1091–92 (8th Cir. 2012). If the claimant can still perform past relevant work, he will not be found to be disabled; if not, the ALJ proceeds to step five to determine whether the claimant is able to perform any other work in the national economy in light of his age, education and work experience. 20 C.F.R. §§ 416.920(a)(4)(v). If the claimant cannot make an adjustment to other work, then he will be found to be disabled. 20 C.F.R. §§ 416.920(a)(4)(v), 404.1520(a)(4)(v).

Through step four, the burden remains with the claimant to prove he is disabled. Vossen v. Astrue, 612 F.3d 1011, 1016 (8th Cir. 2010). At step five, the burden shifts to the Commissioner to establish that the claimant maintains the RFC to perform a significant number of jobs within the national economy. Brock v. Astrue, 674 F.3d 1062, 1064 (8th Cir. 2012). "The ultimate burden of persuasion to prove disability, however, remains with the claimant." Harris v. Barnhart, 356 F.3d 926, 931 n. 2 (8th Cir.2004); see also Stamper, 174 F. Supp. 3d at 1063.

The evaluation process for mental impairments is set forth in 20 C.F.R. §§ 404.1520a, 416.920a. The first step requires the Commissioner to "record the pertinent signs, symptoms, findings, functional limitations, and effects of treatment" in the case record to assist in the determination of whether a mental impairment exists. See 20 C.F.R. §§ 404.1520a(b)(1), 416.920a(b)(1). If it is determined that a mental impairment exists, the Commissioner must indicate whether medical findings "especially relevant to the ability to work are present or absent." 20 C.F.R. §§ 404.1520a(b)(2), 416.920a(b)(2). The Commissioner must then rate the degree of

functional loss resulting from the impairments in four areas deemed essential to work: activities of daily living, social functioning, concentration, and persistence or pace. See 20 C.F.R. §§ 404.1520a(b)(3), 416.920a(b)(3). Functional loss is rated on a scale that ranges from no limitation to a level of severity which is incompatible with the ability to perform work-related activities. See id. Next, the Commissioner must determine the severity of the impairment based on those ratings. See 20 C.F.R. §§ 404.1520a(c), 416.920a(c). If the impairment is severe, the Commissioner must determine if it meets or equals a listed mental disorder. See 20 C.F.R. §§ 404.1520a(c)(2), 416.920a(c)(2). This is completed by comparing the presence of medical findings and the rating of functional loss against the paragraph A and B criteria of the Listing of the appropriate mental disorders. See id. If there is a severe impairment, but the impairment does not meet or equal the listings, then the Commissioner must prepare an RFC assessment. See 20 C.F.R. §§ 404.1520a(c)(3), 416.920a(c)(3).

## IV. Decision of the ALJ

The ALJ found Plaintiff had the severe mental impairments of depression and anxiety[2], but that no impairment or combination of impairments met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 17-20). After considering the entire record, the ALJ determined that Plaintiff retained the mental ability to perform simple, routine tasks with no fast-paced production work and only occasional interaction with the public, coworkers, and supervisors. (Tr. 21-23). The ALJ found Plaintiff unable to perform any past relevant work (Tr. 23-24), but that there are jobs in the national economy that he can perform given his age, education, work experience and RFC such as document preparer,

---

[2] The ALJ also found Plaintiff had the severe impairments of scoliosis, hypertension and cirrhosis and the non-severe impairments of surgically corrected carpal tunnel syndrome, opioid abuse, and "history of treatment for hypogonadism, hyperlipidemia, hepatic steatosis, diabetes mellitus, and gastrointestinal bleeds associated with opioid dependence." (Tr. 17-18). Only Plaintiff's mental RFC is at issue.

product inspector, and addresser (Tr. 24-25). Thus, the ALJ found Plaintiff was not disabled as defined by the Act. (Tr. 25).

V.     **Discussion**

In his appeal of the ALJ's decision, Plaintiff argues the ALJ erred in assessing his mental RFC by failing to properly evaluate the medical opinions of his treating psychiatrist Syed Imam, M.D., and the State agency non-examining consultant Keith Allen, Ph.D. Plaintiff further argues the ALJ failed to provide a narrative explanation of the evidence supporting the mental RFC.

RFC is defined as the most a claimant can still do despite the physical and mental limitations resulting from her impairments. See 20 C.F.R. §§ 404.1545(a), 416.945(a). An ALJ determines a claimant's RFC "based on all the relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of [her] limitations." Strongson v. Barnhart, 361 F.3d 1066, 1070 (8th Cir. 2004) (quoting McKinney v. Apfel, 228 F.3d 860, 863 (8th Cir. 2000)). The ALJ "may not simply draw his own inferences about plaintiff's functional ability from medical reports;" instead, the RFC assessment should include a narrative discussion demonstrating how the evidence logically supports the ALJ's conclusions. Strongson, 361 F.3d at 1070. "Because a claimant's RFC is a medical question, an ALJ's assessment of it must be supported by some medical evidence of the claimant's ability to function in the workplace." See Steed v. Astrue, 524 F.3d 872, 875 (8th Cir. 2008) (quoting Cox v. Astrue, 495 F.3d 614, 619 (8th Cir. 2007)).

**Medical records**

In determining Plaintiff's mental RFC, the ALJ first found that Plaintiff's longitudinal medical record reflects that his mental condition "was stable throughout the relevant period, and he did not require a psychiatric hospital admission." (Tr. 22). The record reveals that on February

10, 2016, Plaintiff was evaluated by Dr. Imam for anxiety, depression, mood lability, anger and irritability. Plaintiff reported paranoia, suspicion, a past suicide attempt, and self-harm by cutting to take away emotional pain. (Tr. at 304). He also reported use of Suboxone for pain due to drug rehabilitation and a past suicide attempt. (Tr. at 306). During the mental status examination, Plaintiff avoided eye contact and demonstrated an anxious and depressed mood, but was well-oriented with fair memory, insight, and judgment. (Tr. at 307-08). Dr. Imam diagnosed Plaintiff with recurrent and severe major depressive disorder without psychotic features, generalized anxiety disorder, alcohol use, cannabis dependence, and opioid dependence. (Tr. at 308). Dr. Imam strongly advised Plaintiff to start anger management therapy, abstain from drugs and alcohol, keep a sleep, mood, and behavior log to bring to each visit, and begin a healthy diet and exercise routine. (Tr. at 308).

On April 13, 2016, Plaintiff saw Dr. Imam for medication review. Plaintiff reported anxiety, depression, insomnia, relationship problems, and feelings of worthlessness. (Tr. at 338). During the mental health exam, Plaintiff appeared distracted and guarded and exhibited an anxious and labile mood with labile affect. At the same time, Plaintiff demonstrated appropriate eye contact, normal speech, flow of thought and thought content; had fair recent and remote memory; had increased motor activity; and fair insight and judgment. (Tr. at 340). Dr. Imam prescribed an additional antidepressant, Remaron. (Tr. 342). Plaintiff's diagnoses and treatment plan remained the same. (Tr. 341-42).

On June 14, 2016, Plaintiff saw Dr. Imam for medication review. Plaintiff stated that he had stopped taking one of his prescribed antidepressants, Wellbutrin, and was only taking half of the other – Remaron – because he was "very tired." (Tr. 748). Dr. Imam discontinued Plaintiff's prescription for Wellbutrin, decreased his dosage of Remaron, and started Plaintiff on Trintellix.

(Tr. 753). In addition to his previously reported symptoms, Plaintiff expressed a major anger problem and desire to be left alone. (Tr. at 748). He reported depressive symptoms of sadness, loss of interest, guilt, difficulty with concentration, forgetfulness, insomnia, tiredness/fatigue, loss of appetite, isolation, crying easily, and suicidality, lasting for a few days to two or more weeks. (Tr. at 748). Plaintiff also described symptoms of anxiety such as nervousness, jitteriness, sweating, shortness of breath, crying easily, tachycardia, feelings of losing control, and fear of future attacks, lasting from several minutes to an hour. (Tr. at 748). Plaintiff reported paranoia and suspiciousness. (Tr. at 748). No mental status exam was performed at this visit and his assessment and treatment plan remained the same. (Tr. at 752-753).

On September 20, 2016, Plaintiff saw Dr. Imam for medication review. His symptoms remained unchanged. (Tr. at 744). During the mental status exam, Dr. Imam observed Plaintiff to be distracted, guarded, depressed, and anxious. (Tr. at 744). His diagnoses and treatment plan remained the same. (Tr. at 745-746).

On November 15, 2016, Plaintiff saw Dr. Imam for medication review. Plaintiff reported daily struggle, overwhelming medical problems, and financial stresses and associated symptoms of anxiety, depression, anger, irritability, and relationship problems. (Tr. at 737). Dr. Imam increased Plaintiff's Trintellix prescription. (Tr. 741). A mental status examination was not performed, and his diagnoses and treatment plan remained unchanged. (Tr. at 739-740).

On January 17, 2017, Plaintiff saw Dr. Imam for continued mental health problems. He reported that he was unhappy and had relationship difficulties with his partner due to his back injury and inability to work. (Tr. at 731). He also reported anxiety, depression, insomnia, relationship problems, and feelings of worthlessness. (Tr. at 731). During the mental health exam, Dr. Imam observed Plaintiff to be distracted, guarded, anxious and depressed. (Tr. at 733). Plaintiff

9

avoided eye contact and demonstrated loose associations in thought flow and anxieties and worthlessness in thought content. (Tr. at 733). His memory, insight, and judgment were fair, and he demonstrated normal motor activity. (Tr. at 733). Dr. Imam again urged Plaintiff to participate in therapy but noted "he is reluctant and still refusing it." (Tr. 731, 734). Dr. Imam prescribed Seroquel for anxiety and anger. (Tr. 734).

At an August 7, 2017 visit, Plaintiff reported that he had no libido, was maximally stressed, suicidal at times, and had difficulties with his home life and significant other. (Tr. at 727). He also reported that he continued to have bad days and that every day was a new struggle. (Tr. at 727). Dr. Imam strongly advised Plaintiff to participate in therapy, but noted "he is reluctant and still refusing it." (Id.). Dr. Imam also advised Plaintiff to abstain from drugs and alcohol, keep a sleep, mood, and behavior log to bring to each visit, and begin a healthy diet and exercise program. (Tr. at 727-28).

On November 8, 2017, Plaintiff reported that he had more bad days than good, experienced constant worry about his disability case, was not motivated, and had no libido despite testosterone treatment. (Tr. at 724). Dr. Imam's recommendations remained the same. (Tr. at 722-723).

On December 14, 2017, Dr. Imam modified Plaintiff's mental health diagnoses to include recurrent, severe major depressive disorder, generalized anxiety disorder, moderate alcohol use disorder, and moderate opioid use disorder. (Tr. at 726).

The medical evidence discussed above reflects that Plaintiff's treatment remained relatively consistent over the relevant period (he was treated with the same two to three medications), even when he had increased symptoms. Numerous progress notes showed positive objective findings were made, i.e., Plaintiff appeared well-oriented with fair memory, insight, and judgment (Tr. at 307-08), demonstrated appropriate eye contact, normal speech, flow of thought

and thought content; fair recent and remote memory; increased motor activity; and fair insight and judgment (Tr. at 340). Despite Plaintiff's reports of anxiety and depression, he has not required intensive psychiatric therapy other than medication management. Plaintiff has also acknowledged that the medications have helped him. (Tr. 42).

Furthermore, Plaintiff reported no hospitalizations due to his symptoms of anxiety and depression. Plaintiff argues that the lack of hospitalization does not preclude a finding of disability, which is correct. See Reed v. Barnhart, 399 F.3d 917, 923 (8th Cir. 2005); Cornell v. Colvin, No. No. 3:14-CV-05059 NKL, 2014 WL 7238006, at *6 (W.D. Mo. Dec. 17, 2014). However, continuing to seek out treatment and being hospitalized "may be an indication that an individual's symptoms are a source of distress and may show that they are intense and persistent." Smith v. Berryhill, No. 4:17 CV 2329 DDN, 2018 WL 4593800, at *8 (E.D. Mo. Sept. 25, 2018) (quoting SSR 16-3P, 2017 WL 5180304, at *9 (Oct. 25, 2017)).

Given that Plaintiff's treatment did not involve more aggressive treatments than outpatient appointments with a psychiatrist, and that prescription medications were helpful in managing his symptoms, the Court finds no error in the ALJ's characterization of his condition as "stable overall." See Wise v. Astrue, No. 11–864-CV-W-JCE-SSA, 2012 WL 3156763, at *5, 7 (W.D. Mo. Aug. 2, 2012) (discussing how only outpatient visits for psychiatric care was routine); Brown v. Astrue, No. 4:10CV2300 FRB, 2012 WL 886879, at *9, 14 (E.D. Mo. Mar. 15, 2012) (upholding an ALJ's determination that treatment was conservative and routine where claimant was diagnosed with depression, anxiety, and PTSD, received counseling services and medication, and had essentially mild-to-normal exams).

**Medical opinion evidence**

Next, the ALJ discussed the medical opinion evidence. She noted that on January 16, 2018, Dr. Imam completed a Mental Medical Source Statement wherein he opined that Plaintiff's major depressive disorder and generalized anxiety disorder would cause him to be absent from or to leave work early approximately 4 days per month and to be "off task" 25% or more of the workday. (Tr. 758). Dr. Imam assessed Plaintiff with mild limitations in his ability to understand, remember, and carry out very short and simple instructions; sustain an ordinary routine without special supervision; ask simple questions or request assistance; maintain socially appropriate behavior; to be aware of normal hazards and take appropriate precautions; and set realistic goals or make plans independently of others. (Tr. 758-59). Dr. Imam assessed Plaintiff with moderate limitations in his ability to make simple work-related decisions; interact appropriately with the general public; and respond appropriately to changes in the work setting, and marked limitations in his ability to work in coordination with or proximity to others without being distracted by them; and to travel in unfamiliar places or use public transportation. (Tr. 759). Lastly, Dr. Imam assessed Plaintiff with extreme limitations in eight areas of mental functioning, including his ability to remember locations and work-like procedures; carry out detailed instructions; maintain attention and concentration for extended periods; complete a normal workday and workweek without interruption from psychologically based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods; respond appropriately to criticism from supervisors; and get along with coworkers or peers without distracting them or exhibiting behavioral extremes. (Id.).

The ALJ gave little weight to Dr. Imam's opinion, finding it was not supported by Plaintiff's longitudinal mental status examination findings suggesting his condition was "stable overall." (Tr. 22). In particular, Plaintiff had not required a psychiatric hospital admission since

his alleged onset date and had had some improvement with treatment, i.e., his opioid dependence was in remission. (Tr. 22-23).

Plaintiff argues the ALJ erred in assigning little weight to Dr. Iman's opinion because the ALJ's summary of his mental health treatment records notes only abnormal findings and is thus inconsistent with a finding of stability. (Tr. 330, 338, 724, 727, 731, 737, 744, 748). In addition, Plaintiff argues that psychiatric hospitalization is not required for a finding of disability, see Reed 399 F.3d at 923; Cornell, 2014 WL 7238006, at *6, and that proper evaluation of mental impairments must account for a claimant's functioning over time, see Hutsell v. Massanari, 259 F.3d 707, 713 (8th Cir. 2001); Fazio v. Colvin, No. 4:15-CV-807 ACL, 2016 WL 5405623, at *10 (E.D. Mo. Sept. 28, 2016).

In response, the Commissioner maintains that Plaintiff's unremarkable treatment history consisting of routine visits to a single provider for medication management does not support the extensive limitations described by Dr. Imam. The Commissioner acknowledges that Plaintiff's symptoms did not resolve with treatment but notes they did not worsen, and that he never required a psychiatric hospital admission. The ALJ further found Dr. Imam's assessment unsupported by his mild examination findings in the areas of understanding, remembering, or applying information and adapting or managing oneself, and moderate examination findings in the areas of concentration, persistence and pace. (Tr. 20, 22, 306-07, 339-40, 732-33).

Under the applicable social security regulations, the opinion of a treating physician is normally entitled to controlling weight.[3] Thomas v. Berryhill, 881 F.3d 672, 675 (8th Cir. 2018)

---

[3] For claims filed on or after March 27, 2017, the regulations have been amended to eliminate the treating physician rule. The new regulations provide that the Social Security Administration "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources," but rather, the Administration will consider all medical opinions according to several enumerated factors, the "most

(citation omitted). "However, the Commissioner may discount or even disregard the opinion of a treating physician where other medical assessments are supported by better or more thorough medical evidence," and "may also assign little weight to a treating physician's opinion when it is either internally inconsistent or conclusory." Id.; see also Tatro v. Saul, No. 1:18CV204 PLC, 2020 WL 33106, at *8 (E.D. Mo. Jan. 2, 2020) (citations omitted). The ALJ should consider several factors in weighing medical opinions from a treating source, including the length of the treatment relationship and the frequency of examination. Lawson v. Colvin, 807 F.3d 962, 965 (8th Cir. 2015) (quoting Casey v. Astrue, 503 F.3d 687, 692 (8th Cir. 2007)). Whether the ALJ gives the opinion of a treating physician great or little weight, she must give "good reasons" for doing so. Reece v. Colvin, 834 F.3d 904, 909 (8th Cir. 2016); 20 C.F.R. § 404.1527(c)(2)). Once the ALJ has decided how much weight to give a medical opinion, the Court's role is limited to reviewing whether substantial evidence supports this determination, not deciding whether the evidence supports the plaintiff's view of the evidence. See Brown v. Astrue, 611 F.3d 941, 951 (8th Cir. 2010).

The Court finds substantial evidence in the record supports the ALJ's decision to give little weight to Dr. Imam's opinion because the medical evidence of record reflecting relatively consistent treatment and overall stable condition is inconsistent with the extreme limitations assessed by Dr. Imam. In any event, the ALJ did not reject the moderate limitations assessed by Dr. Imam but instead incorporated many of them directly into Plaintiff's RFC. The ALJ found that because Plaintiff has difficulty concentrating due to depression and anxiety, he is capable of performing simple, routine tasks with no fast-paced production work. (Tr. 23). The ALJ also found

---

important" being supportability and consistency. 20 C.F.R. § 404.1520c. Plaintiff filed his claim in 2016, so the previous Regulations apply.

that Plaintiff can have occasional interaction with the public, coworkers and supervisors in spite of his mental symptoms. (Id.).

Given that he discounted the opinion of Dr. Imam, the ALJ instead concluded that State agency psychological consultant Dr. Allen properly determined that Plaintiff's mental impairments were not disabling. Dr. Allen's opinion indicates similar functional limitations, in particular limitations in understanding and remembering detailed instructions, interacting appropriately with the general public, and responding appropriately to changes in the work setting (Tr. 91-92), but does not conclude that Plaintiff is entirely unable to work. The regulations provide that ALJs are to consider the opinions of State agency psychological consultants "because our Federal or State agency medical or psychological consultants are highly qualified and experts in Social Security disability evaluation." 20 C.F.R. § 416.913a(b)(l).

On May 20, 2016, Dr. Allen reviewed Plaintiff's records from December 2015 to April 2016 for a mental RFC assessment. He found Plaintiff has the ability to understand, remember and carry out short and simple instructions; relate appropriately to co-workers and supervisors in small numbers and for brief periods; adapt to most usual changes common to a competitive work environment; and make simple work-related decisions. (Tr. 92). Dr. Allen opined that Plaintiff would do best in relatively low demand work situations. (Id.). The ALJ gave great weight to Dr. Allen's opinion because it was consistent with Plaintiff's longitudinal mental status examination findings and admissions that he has been capable of caring for four children since his alleged onset date. (Tr. 22).

Plaintiff argues that the ALJ erred in relying on Dr. Allen's assessment because his opinion is outdated and does not consider Plaintiff's two-year treatment record or Dr. Imam's opinion. The Court is unaware of any legal authority which holds that a consultant's medical opinion must be

based on subsequently created medical records, or that the consultant's opinion must necessarily be discounted because it is not based on those records. Barker v. Colvin, No. 14–0900–CV–W–ODS–SSA, 2015 WL 4928556, at *1 (W.D. Mo. Aug. 18, 2015). Indeed, such a timeline is not uncommon in the context of review as claimants will update their medical records and other evidence of record throughout the course of the pendency of their claim and the medical or psychological consultant will necessarily review the file as it is at a certain point in time.

Plaintiff cites Frankl v. Shalala, 47 F.3d 935 (8th Cir. 1995), where the Eighth Circuit concluded it was error for the ALJ to discredit a claimant's complaints of fatigue by relying on older progress notes to the exclusion of subsequent evidence that was consistent with the claimant's complaints. Id. at 939. The Frankl court also observed that the older progress notes preceded a "marked change in [the claimant's] condition," and that the defendant "presented no other medical evidence from a consulting physician to contradict [the claimant's] complaints of fatigue at the time of the hearing," which were also reflected in consistent subsequent medical records. Id. at 938.

Here, however, Plaintiff points to no evidence of any marked change or deterioration in his symptoms between Dr. Allen's May 2016 assessment and Dr. Imam's January 2018 assessment. In fact, as described above, review of the treatment records demonstrate that Plaintiff's condition has remained stable overall. Because there is no evidence that Plaintiff's mental health deteriorated from the time of the state agency review to the time of the hearing, the ALJ could properly rely on Dr. Allen's opinion. Cf. Frankl, 47 F.3d at 937-39. The Court finds Dr. Allen's opinion supports the ALJ's conclusion that Plaintiff is capable of performing simple, routine tasks and can have occasional interaction with the public, coworkers and supervisors despite his alleged mental impairments, and was less limited than Dr. Imam suggested.

16

**Plaintiff's reported activities**

Plaintiff also argues the ALJ disregarded his statements regarding his mental limitations in assessing his RFC. At the hearing, Plaintiff testified that his symptoms of anxiety and depression make it hard for him to do anything, go anywhere, or deal with his children. (Tr. 41). Plaintiff states he has difficulty with focus and concentration (Tr. 42), and gets anxious around people (Tr. 43). The ALJ found that Plaintiff's reported activities of caring for his school-age children and performing chores was inconsistent with his allegations of disabling concentration and memory problems and supports a finding that he is functioning reasonably well. (Tr. 20, 22).

Plaintiff argues that the ability to do some limited daily activities is not inconsistent with a finding of disability. The Court finds no error. The Eighth Circuit has recognized that its cases send "mixed signals" about the significance of a claimant's daily activities in evaluating claims of disability, Clevenger v. Soc. Sec. Admin., 567 F.3d 971, 976 (8th Cir. 2009); however, the caselaw generally suggests that where, as here, such daily activities are inconsistent with a claimant's subjective complaints, it is proper for the ALJ to consider them, see Halverson v. Astrue, 600 F.3d 922, 932–33 (8th Cir. 2010); Thomas, 881 F.3d at 676.

**Narrative discussion**

Lastly, Plaintiff argues the ALJ's RFC is erroneous because she failed to provide a narrative explanation as to what evidence supported the RFC. Because the ALJ is not required "to follow each RFC limitation with a list of specific evidence on which the ALJ relied," the Court rejects Plaintiff's argument. Hilgart v. Colvin, No. 6:12–0322–DGK, 2013 WL 2250877, at *4 (W.D. Mo. May 22, 2013). The ALJ's RFC formulation reflects careful consideration of all evidence related to Plaintiff's credible limitations, and the Court finds no error in its construction.

## VI. Conclusion

The ALJ evaluated all of the medical opinion evidence and adequately explained her reasons for the weight given this evidence in determining the RFC. For these reasons, the Court finds the ALJ's decision is supported by substantial evidence on the record as whole, and, therefore, the Commissioner's decision will be affirmed.

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is **AFFIRMED**, and Plaintiff's Complaint is **DISMISSED** with prejudice. A separate Judgment will accompany this Order.

Dated this 30th day of March, 2020.

_____
**JOHN A. ROSS**
**UNITED STATES DISTRICT JUDGE**